United States District Court
Southern District of Texas
**ENTERED**
November 20, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| DAVRON PRICE, | § | |
| Plaintiff. | § § § | |
| V. | § § | CIVIL ACTION NO. 4:22-cv-03504 |
| COMMISSIONER OF SOCIAL SECURITY, | § § § § | |
| Defendant. | § § | |

## OPINION AND ORDER

Plaintiff Davron Price ("Price") seeks judicial review of an administrative decision denying his application for supplemental security income under Title XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Price and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 23, 26. After reviewing the briefing, the record, and the applicable law, Price's motion for summary judgment (Dkt. 23) is **GRANTED**, and the Commissioner's motion for summary judgment (Dkt. 26) is **DENIED**.

## BACKGROUND

Price filed an application for supplemental security income under Title XVI of the Act on October 21, 2020, alleging disability beginning February 9, 2014. His application was denied and denied again upon reconsideration. On January 18, 2022, an Administrative Law Judge ("ALJ") held a hearing and found that Price was not disabled. The Appeals Council denied review on August 10, 2022, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit

their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id*. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an

indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Price had "not engaged in substantial gainful activity since October 21, 2020, the application date." Dkt. 10-1 at 26.

The ALJ found at Step 2 that Price suffered from "the following severe impairments: schizoaffective disorder, bipolar type; cervical fusion; and borderline intellectual functioning, due to neurocognitive disorder." *Id.*

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments. *See id.* at 27.

Prior to consideration of Step 4, the ALJ determined Price's RFC as follows:

> [Price] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) with additional limitations. Specifically, [Price] is limited to sitting up to 6 hours; standing/walking up to 6 hours; can lift and/or carry up to 50 pounds occasionally and 25 pounds frequently; no climbing ladders, ropes, or scaffolds; should avoid concentrated exposure to hazards machinery or unprotected heights; occasional overhead reaching; simple, nonproduction rate, pace jobs with incidental interaction with the public and occasional contact with coworkers and supervisors; and subject to infrequent changes to work procedures and requirements.

*Id.* at 28.

At Step 4, the ALJ found that Price has no past relevant work. *See id.* at 31. Nonetheless, the ALJ elicited testimony from a vocational expert ("VE") that "there are jobs that exist in significant numbers in the national economy that [Price] can perform." *Id.* Based on the Medical-Vocational Rules, the ALJ explained that Price is not disabled. *See id.* at 32.

## DISCUSSION

Price advances three arguments in support of remand:

1. The ALJ's RFC finding is erroneous because the ALJ failed to consider the medical source statement of Audrey Muehe, Ph.D.
2. The ALJ's Step 5 finding is unsupported by substantial evidence because the RFC does not include all limitations identified by Dr. Muehe.
3. The ALJ's rejection of Price's mother's testimony was error.

I need reach only the first two issues, as they warrant remand.

## A. EVALUATING MEDICAL OPINIONS

"A medical opinion is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions in the abilities listed in . . . this section." 20 C.F.R. § 416.913(a)(2). Specifically,

> (i) Medical opinions in adult claims are about impairment-related limitations and restrictions in:
>
> . . . .
>
> (B) [A claimant's] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting.

*Id.* "On January 18, 2017, the Social Security Administration promulgated new regulations applicable to disability claims filed on or after March 27, 2017." *Williams v. Kijakazi*, No. 23-30035, 2023 WL 5769415, at *2 (5th Cir. Sept. 6, 2023). Because Price filed for benefits after March 27, 2017, the ALJ was required to apply these new regulations. "These new regulations eliminate the old hierarchy of medical opinions, no longer provide for any inherent or presumptive weight, and do away with the examining and non-examining physician terminology." *Id.* Instead, in determining what weight, if any, to give a medical opinion, the ALJ must consider five factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's specialty; and (5) "other factors that tend to support or contradict" the opinion. 20 C.F.R. §§ 416.920c(c),

4

404.1520c(c). The most important factors in evaluating persuasiveness are supportability and consistency. *See id*. § 416.920c(b)(2).

With respect to supportability, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone ex rel. Vellone v. Saul*, No. 1:20-cv-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021). "As for consistency, the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes." *Id*. (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(3)). "[C]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id*.

At a minimum, an ALJ's persuasiveness explanation should "enable[] the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. 2021) (cleaned up). "Stated differently, there must be a discernible logic bridge between the evidence and the ALJ's persuasiveness finding." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-cv-166, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021) (quotation omitted).

**B.   THE ALJ DID NOT EVALUATE DR. MUEHE'S OPINION**

On October 28, 2021—less than three months before the ALJ's hearing—Price underwent a lengthy neuropsychological evaluation with Dr. Audrey Muehe, having been referred to her by the Texas Workforce Commission. Dr. Muehe conducted a battery of tests, including a clinical interview, mental status examination, intelligence test, personality assessment, and a variety of neuropsychological tests. Dr. Muehe issued a detailed 11-page, single-spaced opinion. *See* Dkt. 10-1 at 510–20. After summarizing the results of her testing and evaluation, Dr. Muehe opined that Price has 22 functional limitations. Notably, Dr.

Muehe opined that Price suffers from "Neurocognitive disorder/dementia (decline from premorbid IQ, impaired memory including confabulation, impairments in visuospatial, executive, and language)"; "Slow performance speed and speed of information processing"; "Poor insight and/or denial into impairments"; "Borderline intelligence (at the present time)"; "Poor reading comprehension"; "Poor mathematical skills"; "Limited attention and concentration, easily distracted, difficulty staying focused"; "Problems with multi-tasking"; "Limited ability to comprehend and deal with abstractions"; "Poor coping skills, use of avoidance behaviors"; "Difficulty relating with other people"; "Indecisiveness"; "Difficulty understanding, remembering, and carrying out detailed instructions"; "May have difficulty maintaining regular attendance and being punctual within customary tolerances"; "Difficulty in sustaining an ordinary routine without some oversight, cannot work independently (no motivation and drive)." *Id.* at 515.

There is no dispute that Dr. Muehe's evaluation constitutes a medical opinion that the ALJ was required to evaluate under the new regulations. The Commissioner concedes that "the ALJ did not specifically discuss the details of Dr. Muehe's evaluation," but argues that the ALJ nevertheless "considered the records . . . from Texas Workforce Solutions Vocational Rehabilitation Services, which included Dr. Muehe's evaluation." Dkt. 26 at 12. So that there is no confusion, here is everything the ALJ had to say about those 67 pages of records:

> Records received from Texas Workforce Solutions Vocational Rehabilitation Services noted the claimant was polite but seemed to be slightly uncomfortable and disengaged throughout the duration of the application and interview process. The claimant's mother noted the claimant had health insurance but was on no medications and attended no support groups. The claimant's mother also noted the claimant stopped attending counseling sessions in July 2021 (Exhibit 8F, page 32). The records indicated the claimant was not close to any family member and had no friends. The claimant was reportedly seeking educational and employment services and wanted to renew his welding certificate and work in that industry but has no experience (Exhibit 8F, page 33). The claimant's mother noted the claimant used social media and goes to the corner store, but she drives him

> everywhere. The claimant reported he needed financial help; and, despite his speech being slurred and slow, he did not need assistance with personal hygiene, self-care, or any basic daily living. The claimant's mother noted the claimant never received disability accommodations for high school, yet he graduated from high school; and the claimant could walk but over the past 5 years his mental health declined, and he became recluse (Exhibit 8F, page 33).

Dkt. 10-1 at 30–31. At no point does the ALJ even mention Dr. Muehe's name, or her opinion, much less discuss the substance of that opinion. This is error, plain and simple. I have found error when "the ALJ simply fails to engage in any meaningful discussion of the consistency and supportability of [a source's] medical opinion." *Shugart v. Kijakazi*, No. 3:21-cv-00007, 2022 WL 912777, at *4 (S.D. Tex. Mar. 29, 2022). But here, there is not a lack of *meaningful* discussion—there is no discussion of Dr. Muehe's opinion at all.

This error is unquestionably harmful because the ALJ's RFC does not account for numerous limitations identified by Dr. Muehe. When Price's counsel posed some of those limitations to the VE during the hearing, the VE testified that such limitations would preclude employment. *See* Dkt. 10-1 at 68–75. Perhaps the ALJ would ultimately reject those limitations, but I cannot make *post hoc* rationalizations. *See Chenery Corp.*, 332 U.S. at 196. The ALJ was required to evaluate each medical opinion and did not do so. That error was harmful, so this case must be remanded to the Commissioner.

## CONCLUSION

For the reasons discussed above, Price's motion for summary judgment (Dkt. 23) is **GRANTED**, and the Commissioner's motion for summary judgment (Dkt. 26) is **DENIED**. A final judgment will issue separately.

SIGNED this 20th day of November 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE